Allco Finance v. Klee

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2015

(Submitted: September 2, 2015          Decided: November 6, 2015)

Docket No. 15-20
_____

ALLCO FINANCE LIMITED,

*Plaintiff-Appellant*,

—v.—

ROBERT J. KLEE, in his official capacity as Commissioner of the Connecticut Department of Energy and Environmental Protection,

*Defendant-Appellee*,

OFFICE OF CONSUMER COUNSEL, FUSION SOLAR LLC, NUMBER NINE WIND FARM LLC, GREENSKIES RENEWABLE ENERGY, LLC,

*Intervenors-Appellees*.
_____

Before:

KATZMANN, *Chief Judge*, HALL and LIVINGSTON, *Circuit Judges*.

———————————

Appeal from a district court judgment (Arterton, *J.*), which dismissed the plaintiff's complaint. We hold that: (1) the plaintiff cannot bring claims under 42 U.S.C. §§ 1983 and 1988 to vindicate any rights conferred by the Public Utility Regulatory Policies Act ("PURPA") because PURPA's private right of action forecloses such a remedy; (2) the plaintiff failed to exhaust administrative remedies, a prerequisite to bringing an equitable action seeking to vindicate any rights conferred by PURPA; and (3) the plaintiff lacks standing to bring a preemption action seeking solely to void the contracts awarded to the intervenors. Accordingly, we AFFIRM the district court's judgment on alternative grounds.

———————————

Thomas Melone, Allco Renewable Energy Limited, New York, New York, *for Plaintiff-Appellant*.

Robert D. Snook, Assistant Attorney General, *for* George Jepsen, Attorney General of the State of Connecticut, Hartford, Connecticut, *for Defendant-Appellee*.

Bradford S. Babbitt and James R. Nault, Robinson & Cole LLP, Hartford, Connecticut, *for Intervenors-Appellees Fusion Solar LLC and Number Nine Wind Farm LLC*.

Joseph A. Rosenthal, Principal Attorney, *for* Elin Swanson Katz, Consumer Counsel of the State of Connecticut, New Britain, Connecticut, *for Intervenor-Appellee Office of Consumer Counsel*.

———————————

KATZMANN, *Chief Judge*:

Plaintiff-Appellant Allco Finance Limited ("Allco") appeals from a final judgment entered on December 11, 2014 by the United States District Court for the District of Connecticut (Arterton, *J.*), which dismissed Allco's complaint. Allco brought this action against Defendant-Appellee Robert Klee ("Commissioner"), in his official capacity as Commissioner of the Connecticut Department of Energy and Environmental Protection. Allco alleges that the Commissioner's actions, which were taken pursuant to section 6 of Connecticut Public Act 13-303 ("Section 6") and include his awarding two power purchase agreements to Intervenors-Appellees Number Nine Wind Farm LLC ("Number Nine") and Fusion Solar LLC ("Fusion Solar"), are preempted by the Federal Power Act and the Public Utility Regulatory Policies Act ("PURPA").[1] In addition to seeking damages and fees under 42 U.S.C. §§ 1983 and 1988, Allco sought equitable relief in the form of voiding the intervenors' contracts and enjoining the Commissioner from violating

---

[1] Technically, PURPA is one of several amendments to the Federal Power Act. *See* Federal Power Act, 16 U.S.C. §§ 791–828; PURPA, Pub. L. No. 95-617, 92 Stat. 3117 (1978) (codified in part at 16 U.S.C. § 824a-3). For ease of reference in this opinion, however, any reference to the "Federal Power Act" excludes the sections of the Act enacted under PURPA.

the Federal Power Act and PURPA in any future Section 6 procurement process.

The district court dismissed Allco's complaint, concluding that Allco lacked

standing to sue and, in the alternative, that Allco failed to state a claim. Allco

contests both determinations on appeal.

We AFFIRM the district court's judgment on alternative grounds.

Specifically, we hold that: (1) Allco cannot bring claims under §§ 1983 and 1988 to

vindicate any rights conferred by PURPA because PURPA's private right of

action forecloses these remedies; (2) Allco failed to exhaust its administrative

remedies, a prerequisite for any qualified facility to bring an equitable action

seeking to vindicate specific rights conferred by PURPA; and (3) Allco lacks

standing to bring a preemption action seeking solely to void the contracts

awarded to Intervenors Fusion Solar and Number Nine.

BACKGROUND

A.    **The Federal Power Act and PURPA Statutory Schemes**

We begin with some background on the Federal Power Act and PURPA

statutory schemes. The Federal Power Act gives the Federal Energy Regulatory

Commission ("FERC") exclusive authority to regulate sales of electricity at

4

wholesale in interstate commerce. *See* 16 U.S.C. § 824(b)(1). States may not act in this area unless Congress creates an exception. *Id.* § 824(b). PURPA contains one such exception that permits states to foster electric generation by certain power production facilities ("qualifying facilities") that have no more than 80 megawatts of capacity and use renewable generation technology. *Id.* § 824a-3; *see also id.* § 796(17)(A). A state may regulate wholesale sales by qualifying facilities, but those facilities must generally receive a price for their electricity equal to the buying utility's "avoided costs"—that is, those costs that the utility would have otherwise incurred in procuring the same quantity of electricity from another source. 18 C.F.R. § 292.304(b)(2); 16 U.S.C. § 824a-3(b). PURPA imposes obligations on each state regulatory authority to implement FERC's PURPA regulations. *See* 16 U.S.C. § 824a-3(f)(1) ("[E]ach State regulatory authority shall, after notice and opportunity for public hearing, implement [a new FERC] rule (or revised rule) for each electric utility for which it has ratemaking authority."). PURPA also provides FERC and certain private parties with the ability to enforce the requirement that states implement PURPA. *See id.* § 824a-3(h). Relevant to this appeal, PURPA provides a private right of action to "qualifying cogenerator[s]" to

enforce a state's obligations under PURPA. *Id*. § 824a-3(h)(2)(B).

Even though Allco concedes that it "does not rely on the private right of action under" 16 U.S.C. § 824a-3(h)(2)(B), Appellant's Supp. Br. 1, this private right of action is relevant to several aspects of this appeal, so we briefly describe its structure. First, "qualifying cogenerator[s]," such as Allco, "may petition [FERC] to enforce" a state's requirements to comply with PURPA. § 824a-3(h)(2)(B). Then, "[i]f the Commission does not initiate an enforcement action . . . against a State regulatory authority," such as the Connecticut Department of Energy and Environmental Protection, "within 60 days following the date on which a petition is filed . . . , the petitioner may bring an action in the appropriate United States district court to require such State regulatory authority . . . to comply with such requirements." *Id.* The district court may then "issue such injunctive or other relief as may be appropriate." *Id.* Additionally, FERC "may intervene as a matter of right in any such action." *Id.*[2]

---

[2] Allco argues that § 824a-3(h)(2) is unconstitutional because it permits "an action commandeering a State to implement federal law." Appellant's Supp. Br. 2. Because Allco does not bring its claims under that section, we need not decide the constitutional validity of the provision.

## B.    Factual Background

This case centers on Connecticut's implementation of a 2013 state statute that empowered the Commissioner of Connecticut's Department of Energy and Environmental Protection to solicit proposals for renewable energy, select winners of the solicitation, and direct Connecticut's utilities to enter into wholesale energy contracts with the chosen winners. *See* Act Concerning Connecticut's Clean Energy Goals, 2013 Conn. Acts 303, § 6.

Implementing this statute, the Commissioner solicited Section 6 proposals in July 2013. Allco submitted proposals for five solar projects, each of which was no more than 80 megawatts and satisfied PURPA's criteria for a qualifying facility.

In September 2013, the Commissioner selected Number Nine as one of the recipients of a contract with the utilities. Number Nine received a fifteen-year contract at a fixed price. According to Allco, Number Nine is too large to be a qualifying facility under PURPA, so its selection prevented the selection of at least one of Allco's projects. The Commissioner also directed the utilities to enter into a separate fixed-price contract with Fusion Solar, a generator that was a qualifying

7

facility. According to Allco, Fusion Solar's fixed price will differ from the price that Number Nine otherwise would have received from selling its electricity into the FERC-approved energy market, thereby also violating the Federal Power Act and PURPA regulatory schemes.

In a determination accompanying its selection of Number Nine and Fusion Solar, the Connecticut Department of Energy and Environmental Protection "describ[ed] the basis for its selection of [these] two renewable energy projects to enter into long-term power purchase agreements pursuant to Section 6." J.A. 55. In so doing, the Department set forth a ranked list of proposals. Allco's Harwinton Solar project appeared fourth on that list. Other Allco projects ranked seventh, tenth, and thirteenth. Additionally, Allco bid a project at a lower price than Fusion Solar, but that project was excluded, without explanation, from the ranked list.

After failing to receive a Section 6 contract, Allco filed a complaint in the U.S. District Court for the District of Connecticut, alleging that the Commissioner's implementation of Section 6 was preempted by the Federal Power Act. The complaint alleged that Number Nine was too large to be a

qualifying facility and that the Commissioner's action in compelling a wholesale electricity transaction could be lawful only with respect to a qualifying facility under PURPA. Additionally, the complaint asserted that the Commissioner violated PURPA by selecting a higher bid from the qualifying facility Fusion Solar instead of one of Allco's lower-priced bids.

The Commissioner moved to dismiss this complaint, and the district court granted that motion for two independent reasons. The district court first concluded that Allco lacked standing, both because its injuries were not within the Federal Power Act and PURPA's "zone of interests" and because its injuries were not likely to be redressed by a favorable judgment. *Allco Fin. Ltd. v. Klee*, No. 13-cv-1874, 2014 WL 7004024, at *3–6 (D. Conn. Dec. 10, 2014). In the alternative, the district court concluded that Allco failed to state a claim, both because the Commissioner's actions were not preempted and because there was no right of action available to Allco under 42 U.S.C. § 1983. *Id.* at *6–10. On appeal, Allco contests both sets of determinations.

## DISCUSSION

We review de novo a district court's dismissal of a complaint both for lack of standing and for failure to state a claim. *See Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009). "[W]e are entitled to affirm the judgment on any basis that is supported by the record." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 482 (2d Cir. 2014).

To establish Article III standing, Allco must demonstrate: "(1) injury-in-fact, which is a 'concrete and particularized' harm to a 'legally protected interest'; (2) causation in the form of a 'fairly traceable' connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) redressability, or a non-speculative likelihood that the injury can be remedied by the requested relief." *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106–07 (2d Cir. 2008) (emphases omitted) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). In determining whether an injury is redressable, we examine whether each aspect of the relief requested by Allco would redress its asserted injury. *See, e.g.*, *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 105–09 (1998).

In this case, Allco asserts as its primary injury its not being selected for a Section 6 contract.[3] To redress this injury, Allco seeks to: (1) invalidate the Commissioner's actions and void the Section 6 contracts awarded to Fusion Solar and Number Nine; (2) enjoin the Commissioner from conducting any future procurement that violates the Federal Power Act or PURPA; and (3) receive money damages and fees resulting from the lost contract and the Commissioner's failure to comply with PURPA.

The crux of Allco's challenge to the power-purchase agreements is that the Commissioner failed to conduct the challenged procurement in compliance with the Federal Power Act and PURPA. Allco seeks to invalidate the results of the first procurement so that the Commissioner can award Allco a Section 6 contract

---

[3] Allco asserts as an alternative theory of injury that it will "earn lower profit from future energy sales under PURPA" because "the [challenged] procurement will affect the utilities' cost structure." Appellant's Br. 33–34. For an injury to be cognizable as an injury-in-fact, the plaintiff must have suffered the injury at the time of the complaint's filing, *Lujan*, 504 U.S. at 570 n.5, or the injury must at least have been "imminent," *id.* at 564. Neither is true with respect to this asserted injury. The PURPA sales that Allco fears it would make at a lower price clearly did not occur at the time that the complaint was filed, as they are future sales. There is also no indication in the record that these future sales were imminent when the complaint was filed. As such, this alternative theory of injury is far too speculative to serve as the basis for an Article III injury-in-fact.

11

based either on the original procurement's bidding results or on the results of a new procurement process. Because the only way in which Allco may obtain a Section 6 contract is for the Commissioner to conduct a PURPA-compliant bidding process, Allco is in effect seeking to enforce PURPA's requirements.[4]

But, as noted earlier, Allco does not seek to enforce PURPA's requirements through the private right of action contained within PURPA itself. Allco concedes that it "does not rely on the private right of action under" 16 U.S.C. § 824a-3(h)(2)(B), Appellant's Supp. Br. 1, and that it "has not petitioned [FERC] to enforce the requirements of 16 U.S.C. § 824a-3(f) against [the Commissioner],"

---

[4] The district court also held that Allco lacks standing to assert a violation of the FPA because the interest Allco asserts is not "within the zone of interests to be protected or regulated by the statute that it says was violated." *Allco Fin. Ltd.*, 2014 WL 7004024, at \*4 (quoting *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 132 S. Ct. 2199, 2210 (2012)). The parties do not address the effect, if any, of *Lexmark International, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014), on the district court's standing analysis. But even assuming that Allco comes within the FPA's zone of interests, we conclude that its claims fail for alternative reasons, as discussed in the text, so we need not decide *Lexmark*'s effect on the district court's zone-of-interests analysis. *Cf. Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 127 (2d Cir. 2003) ("[C]ourts may determine whether a cause of action exists under a given statute, an issue of statutory construction that goes to the merits of the action, before addressing the zone-of-interests prudential dimension of standing . . . .").

*id.* at 2. Instead, Allco brings two other claims—"a claim under 42 U.S.C. § 1983" and "a straightforward pre-emption claim for regulating wholesale sales." Appellant's Supp. Br. 2. We address each of these claims in turn.

## A.    Allco's Claims Under 42 U.S.C. §§ 1983 and 1988

Allco has Article III standing to bring a claim for money damages and fees under §§ 1983 and 1988 because it suffered a monetary loss that is fairly traceable to the challenged conduct and would be redressable through a monetary judgment. *See, e.g., Steel Co.*, 523 U.S. at 96. But to establish its entitlement to money damages for its loss of contract, Allco must show that PURPA provides a non-preempted way in which the Commissioner could have conducted the Section 6 procurement and awarded the contract to Allco. Allco therefore seeks to enforce PURPA indirectly, even if it styles its claim differently and brings it under another right of action.

Because Allco is in effect seeking to enforce PURPA when it requests money damages for its lost Section 6 contract, we must decide whether § 1983 provides a private right of action to enforce PURPA. We undertake a two-part inquiry to determine whether Congress intended to foreclose a § 1983 remedy. First, we ask whether PURPA provides "an unambiguously conferred right to

13

support a cause of action brought under § 1983." *Gonzaga Univ. v. Doe*, 536 U.S.

273, 283 (2002); *see also Albright v. Oliver*, 510 U.S. 266, 271 (1994). Second, we must

determine whether there is "indication, express or implicit, that the remedy

[provided in PURPA] is to complement, rather than supplant, § 1983," thereby

overcoming the "ordinary inference that the remedy provided in the statute is

exclusive." *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 122 (2005).

We need not consider the first question because the answer to the second

question clearly forecloses the availability of relief under § 1983. PURPA's

conferral of a private right of action requiring compliance with specific pre-

lawsuit procedures strongly indicates Congress's intent to foreclose a separate

remedy under § 1983. *See, e.g., id.* at 121 ("The provision of an express, private

means of redress in the statute itself is ordinarily an indication that Congress did

not intend to leave open a more expansive remedy under § 1983."). As the *Rancho*

*Palos Verdes* Court recognized, multiple Supreme Court decisions have foreclosed

§ 1983 remedies due to "the existence of more restrictive remedies provided in the

violated statute itself." *Id.* (citing *Smith v. Robinson*, 468 U.S. 992, 1011 (1984)

(concluding that the recognition of a § 1983 action would "render superfluous

14

most of the detailed procedural protections outlined in the statute"); *Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 20 (1981) ("[W]hen 'a state official is alleged to have violated a federal statute which provides its own comprehensive enforcement scheme, the requirements of that enforcement procedure may not be bypassed by bringing suit directly under § 1983.'")). The existence of PURPA's private right of action forecloses Allco's ability to bring a § 1983 claim for money damages based on the Commissioner's failure to award Allco a PURPA-compliant Section 6 contract.

Additionally, because no § 1983 claim is available to enforce PURPA, Allco also cannot bring a § 1988 claim for attorneys' fees predicated on the Commissioner's failure to comply with PURPA. *See* 42 U.S.C. § 1988(b) (limiting the award of attorneys' fees to certain actions, including "any action or proceeding to enforce a provision of [§ 1983]").

## B.     Allco's Preemption Claim

Allco also seeks equitable relief through what it describes as "a straightforward pre-emption claim for regulating wholesale sales." Appellant's Supp. Br. 2. This preemption claim requests two forms of relief: (1) enjoining the Commissioner from conducting future procurements that violate the Federal

15

Power Act or PURPA and (2) voiding the Section 6 contract awards to Fusion Solar and Number Nine. We analyze each form of relief separately.

1.    *Injunction Related to Future Procurements*

First, we affirm the district court's dismissal of Allco's claims seeking equitable relief regarding future procurements conducted by the Commissioner. For such relief to redress Allco's injury, it must be "likely, as opposed to merely speculative," that Allco receive the Section 6 contract that it seeks. *Friends of the Earth, Inc. v. Laidlaw Envtl Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000). Based on the record before us, the only way in which the Commissioner can issue a Section 6 contract that is not preempted by the Federal Power Act is if that contract meets the requirements of the PURPA exception. As Allco acknowledges, its "status as a small power producer" under PURPA "is relevant to [its] Article III standing and to explain[ing] why [its] injury is redressable." Appellant's Supp. Br. 2. As such, any equitable relief relating to future contracts awarded under Section 6 necessarily implicates PURPA; otherwise, such relief would provide no path by which Allco could eventually obtain a non-preempted Section 6 contract.

To the extent that Allco seeks to enforce PURPA's requirements through a "straightforward pre-emption claim," Appellant's Supp. Br. 2, it "cannot avoid the administrative exhaustion requirement of [§ 824a-3(h)(2)(B)] simply by restating its PURPA claim under a different heading," *Niagara Mohawk Power Corp. v. FERC*, 306 F.3d 1264, 1270 (2d Cir. 2002). This Court has held that a party cannot evade PURPA's administrative exhaustion requirement by characterizing an otherwise covered PURPA-related equitable claim as a Supremacy Clause claim. *Id.* Therefore, if Allco's preemption claim—regardless of how it is characterized—is covered by § 824a-3(h)(2)(B)'s administrative exhaustion requirement, then Allco's claim must be dismissed.

PURPA requires administrative exhaustion for claims brought by qualified facilities[5] that are attempting to enforce the requirements of § 824a-3(f). *See* § 824a-3(h)(2)(B). Section 824a-3(f) requires states to "implement" FERC's rules promulgated under 16 U.S.C. § 824a-3(a)[6] by "issuing regulations, by resolving

---

[5] It is undisputed that Allco is a qualified facility under § 824a-3(h)(2)(B). *See* J.A. 9.

[6] Section 824a-3(a) empowers FERC to promulgate rules to encourage cogeneration and small power production. Allco's claim can be characterized as an attempt to enforce § 210(a) rules, including 18 C.F.R. § 292.304(d), that require

disputes on a case-by-case basis, or by taking any other action reasonably designed to give effect to FERC's rules." *FERC v. Mississippi*, 456 U.S. 742, 751 (1982). In *Niagara Mohawk*, we dismissed a preemption claim for failure to exhaust PURPA's administrative remedies because the claim challenged "a state rate-setting regulation promulgated pursuant to [§ 824a-3(f)], the provision that [§ 824a-3(h)(2)(B)] petitions are intended to enforce." 306 F.3d at 1270. *Niagara Mohawk* is an example of a straightforward application of § 824a-3(h)(2)(B)'s administrative exhaustion requirement—a qualified-facility plaintiff brought a preemption claim challenging a state *regulation promulgated under* § 824a-3(f). *See id.*

Allco's preemption claim presents us with a novel application of PURPA's administrative exhaustion requirement. Allco's attempt to enforce PURPA's requirements stems not from a challenge to a state regulation promulgated under § 824a-3(f) but from a challenge to a state procurement law—Section 6. This distinction, however, does not relieve Allco of its obligation to exhaust its administrative remedies under § 824a-3(h)(2)(B) because its claim is still an

utilities to buy power from Allco at a rate at or below the avoided cost.

18

attempt to enforce § 824a-3(f). A state's ongoing obligation under § 824a-3(f) to "implement" PURPA regulations can be accomplished in a variety of ways, but, at a minimum, § 824a-3(f) undoubtedly prevents states from violating § 824a-3(a). *See Mississippi*, 456 U.S. at 751; *see also* POLICY STATEMENT REGARDING COMM'N'S ENF'T ROLE UNDER SECTION 210 OF [PURPA], 23 FERC P 61,304, 61,644 (1983). The heart of Allco's claim is that the Commissioner failed to follow § 824a-3(a) regulations when conducting the Section 6 procurement and the procurement is therefore preempted. Allco's characterization of its cause of action "under a different heading" does not transform its claim into something other than what it is: an action to compel a state to implement § 824a-3(a). *Niagara Mohawk*, 306 F.3d at 1270.

Our reading of §§ 824a-3(f) and 824a-3(a) comports with our holding in *Niagara Mohawk*. In *Niagara Mohawk*, we distinguished our holding from *Freehold Cogeneration Ass'n L.P. v. Board of Regulatory Commissioners*, 44 F.3d 1183 (3d Cir. 1995), on the grounds that the claim in *Freehold* was not a challenge to a state regulation promulgated under § 824a-3(f). 306 F.3d at 1270. We now distinguish our holding from *Freehold* on similar, yet distinct, grounds. The preemption claim

in *Freehold* did not require § 824a-3(h)(2)(B) exhaustion because the claim was an attempt to enforce the exemption provisions contained in § 824a-3(e), not an attempt to enforce the qualified-facility regulations in § 824a-3(a). *See Freehold*, 44 F.3d at 1184–85. Allco's preemption claim is subject to § 824a-3(h)(2)(B)'s administrative exhaustion requirement because Allco's claim is an attempt to enforce § 824a-3(f), which requires Connecticut to implement FERC's rules promulgated under § 824a-3(a).

This Court has also held that the administrative exhaustion requirement is jurisdictional.[7] *See Niagara Mohawk Power*, 306 F.3d at 1270 ("We hold that the District Court correctly dismissed [the plaintiff's] PURPA claim as against the [defendants] for lack of subject matter jurisdiction because of [the plaintiff's] failure to exhaust its administrative remedy by petitioning FERC to bring an

---

[7] Allco argues that, in light of more recent Supreme Court decisions in *Sebelius v. Auburn Regional Medical Center*, 133 S. Ct. 817, 824 (2013), and *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006), PURPA's administrative exhaustion requirement is not actually a jurisdictional bar. We need not determine whether these Supreme Court decisions call into question that part of the holding in *Niagara Mohawk Power* because Allco's claims would be dismissed for failure to exhaust administrative remedies regardless of whether the requirement is jurisdictional.

enforcement action against the [state regulatory agency] in the first instance."); *see also id.* ("[B]ecause [the plaintiff] has not satisfied this [exhaustion] requirement, its [Supremacy Clause] claims against the [defendants] should have been dismissed for lack of subject matter jurisdiction."). Accordingly, Allco's attempts to characterize its PURPA-enforcement efforts as preemption or Supremacy Clause claims are unavailing, and we affirm the dismissal of those claims on the alternative grounds that Allco failed to comply with the administrative exhaustion requirement.

2.     *Equitable Relief Voiding Fusion Solar and Number Nine's Contracts*

Having disposed of Allco's claims seeking equitable relief regarding future procurements, we must finally resolve Allco's claims that seek solely to invalidate the results of the challenged procurement and void its competitors' contracts. To the extent that these claims seek only to invalidate the results of the prior procurement—and not also to require the Commissioner to conduct future procurements in compliance with PURPA—Allco lacks standing because that requested relief does not redress its injury, *i.e.*, its not being selected for a Section 6 contract.

Allco contends that its preemption claim should be permitted because it can redress its injuries simply by invalidating the Commissioner's prior selections and voiding the contracts given to Fusion Solar and Number Nine. But those forms of relief, standing alone, fail to redress Allco's injuries, as they do not make it "likely, as opposed to merely speculative," that Allco will eventually receive a Section 6 contract. *Friends of the Earth*, 528 U.S. at 181. Allco must show, at a minimum, that the requested relief provides a path for Allco to eventually obtain a Section 6 contract. But invalidating the Section 6 contracts awarded to Fusion Solar and Number Nine would simply deny Allco's competitors a contractual benefit without redressing Allco's injury— its not being selected for a Section 6 contract. Because merely voiding its competitors' contracts would not redress Allco's injury, Allco also lacks standing to seek such equitable relief.

## CONCLUSION

For the reasons stated herein, we AFFIRM the district court's judgment.