*Allco Finance Limited, et al. v. Anthony Roisman, et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of July, two thousand twenty-three.

Present:
> DEBRA ANN LIVINGSTON,
> *Chief Judge*,
> DENNY CHIN,
> MARIA ARAÚJO KAHN,
> *Circuit Judges*.

---

ALLCO FINANCE LIMITED, OTTER CREEK SOLAR LLC, PLH VINEYARD SKY LLC,

        *Plaintiffs-Appellants*,

        v.                                                                22-2726

ANTHONY ROISMAN, RILEY ALLEN, MARGARET CHENEY, in their official capacities as commissioners of the Vermont Public Utility Commission,

        *Defendants-Appellees*.[*]

---

For Plaintiffs-Appellants:        Thomas Melone, Allco Renewable Energy Limited, New Haven, CT.

---

[*] The Clerk of Court is respectfully directed to amend the official caption as set forth above.

For Defendants-Appellees: Eleanor L.P. Spottswood, Solicitor General, *for* Charity R. Clark, Attorney General for the State of Vermont, Montpelier, VT.

Appeal from a judgment of the United States District Court for the District of Vermont (Reiss, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **VACATED** and the case is **REMANDED**.

Plaintiffs-Appellants Allco Finance Limited, Otter Creek Solar LLC, and PLH Vineyard Sky LLC (collectively, "Plaintiffs") appeal from a judgment of the United States District Court for the District of Vermont (Reiss, *J.*) dismissing their October 12, 2021 complaint (the "Complaint"). The Complaint alleges that Vermont's laws violate the Public Utility Regulatory Policies Act ("PURPA"), 16 U.S.C. § 2601 et seq., and are preempted by the Federal Power Act ("FPA"), which grants the Federal Energy Regulatory Commission ("FERC") the exclusive power to regulate the sale of electric energy at wholesale in interstate commerce. 16 U.S.C. § 824(b)(1). In a July 7, 2022 opinion and order, the district court found that Plaintiffs' claims against Defendants-Appellees Anthony Roisman, Riley Allen, and Margaret Cheney, in their official capacities as commissioners of the Vermont Public Utility Commission ("VPUC") (collectively, "Defendants"), were barred by sovereign immunity under the Eleventh Amendment. For the reasons set forth below, we vacate the district court's judgment and remand the case for proceedings consistent with this order. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

\* \* \*

We review *de novo* a dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6), "accepting all factual allegations in the complaint as true and drawing all reasonable

inferences in the plaintiff's favor." *Tongue v. Sanofi*, 816 F.3d 199, 209 (2d Cir. 2016) (citation omitted). The pleading standard is well established. A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In contrast, when a district court dismisses a complaint under Rule 12(b)(1), we review its legal conclusions *de novo* and its factual findings for clear error. *Leitner v. Westchester Cmty. Coll.*, 779 F.3d 130, 134 (2d Cir. 2015); *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). We construe all ambiguities and draw all inferences in the plaintiff's favor, but "[t]he plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence," *Aurecchione*, 426 F.3d at 638, and "[w]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits," *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citation omitted).

Whether Eleventh Amendment immunity "constitutes a true issue of subject matter jurisdiction or is more appropriately viewed as an affirmative defense" has not yet been decided by the Supreme Court or this Court. *Carver v. Nassau Cty. Interim Fin. Auth.*, 730 F.3d 150, 156 (2d Cir. 2013) (citing *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 391 (1998)). Here, we need not decide whether the district court's dismissal on sovereign immunity grounds was properly pursuant to Rule 12(b)(1) or Rule 12(b)(6) because we draw all inferences in Plaintiffs' favor and rely on the pleadings and facts of which we may take judicial notice. Moreover, even assuming *arguendo* that we may consider the facts Defendants present in their brief and letter to this Court, we reach the same result. We consider the applicability of sovereign immunity and each of Defendants' additional jurisdictional challenges in turn.

3

## I. Sovereign Immunity

The Eleventh Amendment generally bars private individuals from suing states in federal court. *Leitner*, 779 F.3d at 134. This broad immunity "encompasses not just actions in which a state is actually named as a defendant, but also certain actions against state agents and instrumentalities." *Id.* However, "[a] plaintiff may avoid the Eleventh Amendment bar to suit and proceed against individual state officers, as opposed to the state, in their official capacities, provided that his complaint (a) 'alleges an ongoing violation of federal law' and (b) 'seeks relief properly characterized as prospective.'" *In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). The plaintiff's allegation must be "neither insubstantial nor frivolous." *Id.* at 618 (citation omitted). Prospective relief is defined as relief sought that is not "retrospective or designed to compensate for a past violation of federal law." *Id.* at 619. In short, "there must be a possible effectual remedy for the violations [the plaintiff] alleges, and the remedy must be prospective relief that would address an ongoing violation of federal law." *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 392 (2d Cir. 2022).

The district court erred in holding that the Eleventh Amendment bars Plaintiffs' claims because the Complaint satisfies the exception to the Eleventh Amendment provided by the *Ex parte Young* doctrine for suits against state officials that seek only prospective injunctive relief to "end a continuing violation of federal law."[1] *Green v. Mansour*, 474 U.S. 64, 68 (1985). The

---

[1] We do not reach Plaintiffs' argument that Congress abrogated states' sovereign immunity in Section 210(h) of PURPA, because Plaintiffs forfeited the argument by raising it only in their Reply Brief, and because we conclude that the *Ex parte Young* exception applies. *See McCarthy v. SEC*, 406 F.3d 179, 186 (2d Cir. 2005) ("[A]rguments not raised in an appellant's opening brief, but only in his reply brief, are not properly before an appellate court.").

Complaint plausibly seeks prospective relief, challenging two aspects of Vermont's Standard Offer Program and seeking to enjoin VPUC "from applying those aspects of its Orders in the future." J.A. 11. Plaintiffs allege that their facilities have submitted bids to the program "in most years since its inception" or in some years "would have submitted a bid if the Standard Offer program complied with federal law." J.A. 26. The Complaint also states that Plaintiffs have some "existing Standard Offer contract[s] . . . but at a price less than the then applicable VPUC LRAC Rate." J.A. 12–13. In addition to seeking declaratory relief, the Complaint seeks to enjoin Defendants "from continuing to apply the VPUC's market-based mechanism and caps on Plaintiffs' [qualifying] facilities [('QFs')]"; "from continuing to apply any restriction that prevents access to the VPUC-calculated avoided cost rate for the relevant year of the Standard Offer program"; and "to issue new orders requiring the VPUC to implement PURPA in a manner consistent with federal law." J.A. 36.

Defendants argue that the relief Plaintiffs seek is not plausibly prospective in nature. Even assuming *arguendo* that we may consider the facts Defendants present to decide the jurisdictional issue, we cannot conclude that Vermont's alleged violations of PURPA have ended. The state law authorizing Vermont's Standard Offer Program, 30 V.S.A. § 8005a, has not been repealed. The statute states that "the Commission shall issue standard offers to new standard offer plants until a cumulative plant capacity amount of 127.5 MW is reached." 30 V.S.A. § 8005a(c). Defendants assert that "[t]he final year for the program to solicit new contracts was 2022." Appellee's Br. at 16 (citing § 8005a(c)(1)(A)). The Vermont Supreme Court has explained that "[t]he standard-offer program provides for standard-offer contracts accounting for a cumulative capacity of 127.5 MW of electricity, allocated in annual statutorily designated increments ranging from five MW in 2013–2015 to ten MW in 2019–2022." *In re Investigation*

5

*to Rev. Avoided Costs that Serve as Prices for Standard-Offer Program in 2020*, 254 A.3d 178, 182–83 (Vt. 2021). However, Defendants have not pointed to evidence that the capacity has in fact been reached. Defendants' June 15 letter to this Court also acknowledges that Vermont has left "open the possibility of a future RFP or other process to fill unmet re-allocation needs" although the process "does not *currently* call for soliciting any new bids." Appellees' Letter at 1, Dkt. No. 55 (emphasis added).

Further, the Complaint challenges the statutory capacity cap (and the annual caps) themselves as a violation of PURPA. J.A. 10. Thus, even if the overall statutory cap has in fact been reached as of the 2022 bids, Plaintiffs' challenge to the cap, which remains codified in Vermont law, is still live. *See Exxon Mobil Corp.*, 28 F.4th at 395 (explaining that "the voluntary cessation of allegedly illegal conduct is not enough to render a case moot" but "a case involving such voluntary cessation may be moot where there is no reasonable expectation of the alleged violation's recurrence, and interim events have completely and irrevocably eradicated the effects of the alleged violation" (citations and internal quotation marks omitted)). Here, it is possible that Vermont may extend the program and the statutory cap, and the effects of the program continue through the awarded contracts and the rates assigned to those contracts.

Moreover, it is not clear that the challenged actions all occurred in the past, or specifically in 2020 as Defendants assert. The Complaint alleges that Plaintiffs submitted bids in multiple years, intended to submit bids in other years, and seek new rates for some existing contracts. Plaintiffs also allege in the Complaint that they submitted commitments to VEPP Inc. to sell all the energy and capacity from specific QFs and that the Standard Offer Program's cap prevents those contracts from being executed. The Complaint additionally alleges that Vermont's overall statutory scheme does not comply with PURPA, includes factual allegations that VPUC's

alternative program, Rule 4.100, violates PURPA, and alleges that Vermont does not enforce "must-take" obligations under PURPA.    J.A. 25, 29.    These are all ongoing alleged injuries that the requested injunctive relief may remedy.

Defendants' final argument that Plaintiffs' requested relief is not prospective is that the Complaint does not allege that Vermont is violating new regulations promulgated by FERC in 2020.    For the reasons discussed in the following section, we cannot conclude that the new regulations moot Plaintiffs' claims and consequently we cannot say that the changes render the requested relief retrospective.

## II.    Mootness

"A case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome."    *Tann v. Bennett*, 807 F.3d 51, 52 (2d Cir. 2015) (per curiam) (internal quotation marks and citation omitted).    A case remains live, by contrast, when "a court can fashion *some* form of meaningful relief to award the complaining party."    *Exxon Mobil Corp.*, 28 F.4th at 392 (internal quotation marks and citation omitted).    "When a case becomes moot, the federal courts lack subject matter jurisdiction over the action."    *Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013) (internal brackets and citation omitted).

In some cases, a change in the applicable law may moot a challenge.    *See Harrison & Burrowes Bridge Constructors, Inc. v. Cuomo*, 981 F.2d 50, 61 (2d Cir. 1992) ("Constitutional challenges to statutes are routinely found moot when a statute is amended, . . . or unripe when proposed regulatory amendments are pending.").    However, here, the challenged Vermont laws have not changed, but rather the FERC regulations pursuant to which Vermont acts.    And on its face, the new FERC rule does not resolve the dispute regarding Vermont's compliance with federal regulations.

7

FERC clarifies in its rule that "these changes are effective prospectively for new contracts or [legally enforceable obligations ('LEOs')] and for new facility certifications and recertifications filed on or after the effective date of this final rule; we do not by this final rule permit disturbance of existing contracts or LEOs or existing facility certifications." Fed. Energy & Reg. Comm'n, Qualifying Facility Rates and Requirements Implementation Issues Under the Public Utility Regulatory Policies Act of 1978, 85 Fed. Reg. 54638, 54649 ¶ 66 (Sept. 2, 2020). Thus, to the extent that Plaintiffs seek an injunction requiring Vermont to enforce the LEO they allegedly created and to change the rates applicable to their existing contracts, that relief is not moot (and is still prospective) and does relate to the legality of Vermont's rules under the FERC regulations that existed before 2020.

To the extent that Plaintiffs seek injunctive relief to be awarded new contracts and declaratory relief that Vermont's current statutory scheme violates PURPA, FERC's new regulations are relevant. Defendants argue that the relevant change is that the new regulations give states "the flexibility to set energy and capacity rates pursuant to a competitive solicitation process conducted pursuant to transparent and non-discriminatory procedures consistent with the Commission's Allegheny standard." *Id.* at 54649 ¶ 60. FERC has yet to interpret the validity of Vermont's Standard Offer Program in light of the new rule. On its face, the regulation does not affect the validity of a cap on the amount of contracts a state awards through a competitive solicitation process, which Plaintiffs challenge. Although the rule change is likely to affect the rates that Vermont is able to offer through a bidding process, Plaintiffs primarily challenge the rates awarded to its existing contracts, which would not be affected by the new rule. Thus, it is not clear from the facts available to us at this stage that the change in the regulations moots

Plaintiffs' claims. Whether PURPA preempts Vermont's program, in light of the new regulations, is an issue to be considered on the merits.

## III. Exhaustion

Defendants additionally contend that Plaintiffs failed to exhaust administrative remedies because they did not bring a complaint to FERC to enforce a contract allegedly formed in 2020. Defendants also argue that Plaintiffs' 2016 FERC petition is not relevant to the contract sought in 2020 and that most of the facilities Plaintiffs used to bid in 2020 were not included in the FERC petition. We conclude that Plaintiffs have satisfied the administrative exhaustion requirement.

"Under the exhaustion rule, a party may not seek federal judicial review of an adverse administrative determination until the party has first sought all possible relief within the agency itself." *Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 157 (2d Cir. 2016) (citation omitted). PURPA's administrative exhaustion requirement is jurisdictional. *Allco Finance Limited v. Klee*, 805 F.3d 89, 97 (2d Cir. 2015), *as amended* (Dec. 1, 2015). The text of the statute is broad. A qualifying small power producer challenging a state regulation promulgated under § 824a-3(f) must exhaust administrative remedies by first petitioning FERC to enforce PURPA against the state entity and "[i]f the Commission does not initiate an enforcement action . . . within 60 days," the entity may bring suit in a district court. 16 U.S.C. § 824a–3(h)(2)(B)).

We conclude that Plaintiffs' 2016 FERC petition is "sufficiently broad to satisfy the exhaustion requirement with respect to" all the state actions challenged. *Allco Finance Limited v. Klee*, 861 F.3d 82, 94 n.9 (2d Cir. 2017) ("*Allco V*"). Plaintiffs' 2016 petition asked FERC to initiate an enforcement action against VPUC "to remedy the State of Vermont's improper implementation of PURPA" and named nine challenged state actions, including the bidding requirements, capacity cap, and contractual rates of the Standard Offer Program, as well as Rule

4.100's seven-year limit on LEOs.   J.A. 41.   The petition was brought by the same three plaintiffs in this action and lists docket numbers referring to specific QFs.   However, the substance of petitioners' complaints challenges Vermont's overall PURPA enforcement scheme and is not confined to facts related to any specific QFs.   Defendants also do not allege that Vermont's regulations have changed substantially since the FERC petition.   Thus, Plaintiffs have satisfied the statutory exhaustion requirement to petition FERC to bring an enforcement action regarding Vermont's enforcement of PURPA.

## IV.   Standing

Defendants' final jurisdictional challenge is that Plaintiffs lack standing to seek the 2020 standard-offer contract because most of the facilities they used to bid did not exist as QFs and therefore were ineligible, and the two eligible facilities later received different standard-offer contracts before Plaintiffs filed the Complaint.   To establish Article III standing, a plaintiff must show that (1) he has suffered an "injury in fact[;]" (2) there is "a causal connection between the injury and the conduct complained of[;]" and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."   *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks and citation omitted).   "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical."   *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (internal quotation marks and citation omitted).

In *Allco V*, the Court found standing to assert a claim that the FPA preempted Connecticut's PURPA programs, seeking monetary damages, declaratory relief, and injunctive relief.   The Court accepted that the plaintiff's alleged injury that its facilities were excluded from Connecticut's bidding program due to restrictions alleged to be unlawful under the FPA and

PURPA was "sufficiently 'concrete' and 'particularized' to qualify as injuries-in-fact." *Allco V*, 861 F.3d at 95 (quoting *Spokeo*, 578 U.S. at 339). As to redressability, the Court concluded that the requests for declaratory and injunctive relief met the Article III standing requirement because Connecticut appeared likely to undertake future procurements and the plaintiff was likely to participate. *Id.* at 96 (citing *Alvin Lou Media Inc. v. FCC*, 571 F.3d 1, 6 (D.C. Cir. 2009) ("explaining that a 'disappointed bidder' may establish standing by showing that it is 'ready, willing, and able to participate in a new auction should it prevail'")).

Here, Plaintiffs have established standing for similar reasons to those discussed in *Allco V*. Plaintiffs' claims that their facilities were denied contracts or granted contracts at lower rates than required by law allege sufficiently concrete and particularized injuries. While Vermont asserts that bidding has closed for its current program, its Standard Offer Program remains codified in state law and is likely to resume in some form in the future. In addition, construed broadly, the Complaint challenges Vermont's overall scheme of PURPA implementation through both the Standard Offer Program and Rule 4.100, which is ongoing. Thus, it is likely that declaratory or injunctive relief would redress Plaintiffs' alleged injuries, and the district court has jurisdiction to consider the merits of Plaintiffs' claims.

\*       \*       \*

We have considered Defendants' remaining arguments and find them to be without merit. Accordingly, we **VACATE** the judgment of the district court and **REMAND** the case to the district court for proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

11