*Exxon Mobil v. Healey*

United States Court of Appeals
For the Second Circuit

August Term 2019

Argued:  February 18, 2020
Decided:  March 15, 2022

No. 18-1170

EXXON MOBIL CORPORATION,

*Plaintiff-Appellant,*

*v.*

MAURA TRACY HEALEY, in her official capacity as ATTORNEY GENERAL OF
MASSACHUSETTS, and LETITIA JAMES, in her official capacity as ATTORNEY
GENERAL OF NEW YORK,*

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of New York
No. 17-cv-2301, Valerie Caproni, *Judge.*

Before:  KEARSE, SULLIVAN, AND BIANCO, *Circuit Judges.*

---

* The Clerk of Court is respectfully directed to amend the caption as set forth above.  Additionally, pursuant to Rule 43(c)(2) of the Federal Rules of Appellate Procedure, Attorney General Letitia James is automatically substituted as a Defendant-Appellee for the former Attorney General of New York, Barbara D. Underwood.

Plaintiff-Appellant Exxon Mobil Corporation appeals the dismissal of its complaint against the New York and Massachusetts Attorneys General, which alleged that the states' investigations into Exxon's purportedly deceptive speech regarding climate change were motivated by viewpoint discrimination and violated Exxon's constitutional rights. During the pendency of this appeal, the New York Attorney General closed the New York investigation and commenced an enforcement action, which resolved in Exxon's favor and is not being appealed by the state. Because these events have mooted Exxon's claims against the New York Attorney General, we lack jurisdiction over those claims. As to Exxon's claims against the Massachusetts Attorney General, Exxon could have pursued the relief it now seeks in an earlier Massachusetts state court proceeding arising from the same events that underlie the present suit; its claims against the Massachusetts Attorney General are thus barred under the doctrine of res judicata.

We therefore dismiss the appeal as to the New York Attorney General and affirm the district court's judgment as to the Massachusetts Attorney General.

DISMISSED IN PART AND AFFIRMED IN PART.

> JUSTIN ANDERSON, Paul, Weiss, Rifkind, Wharton & Garrison LLP, Washington, District of Columbia (Theodore V. Wells, Jr., Daniel J. Toal, Paul, Weiss, Rifkind, Wharton & Garrison LLP, New York, New York; Patrick J. Conlon, Daniel E. Bolia, Exxon Mobil Corporation, Spring, Texas, *on the brief*), *for Plaintiff-Appellant* Exxon Mobil Corporation.
>
> SETH SCHOFIELD, Assistant Attorney General (Richard A. Johnston, Melissa A. Hoffer, Christophe G. Courchesne, Amanda Morejon, Assistant Attorneys General, *on the brief*), *for* Maura T. Healey, Attorney General of the Commonwealth of Massachusetts, Office of the Attorney General of Massachusetts, Boston, Massachusetts, *for Defendant-Appellee* Attorney General of Massachusetts.

ANISHA S. DASGUPTA, Deputy Solicitor General (Scott A. Eisman, Assistant Solicitor General, *on the brief*), *for* Letitia James, Attorney General of the State of New York, New York, New York, *for Defendant-Appellee* Attorney General of New York.

Jeffrey C. Mateer, First Assistant Attorney General, Brantley D. Starr, Deputy First Assistant Attorney General, James E. Davis, Deputy Attorney General for Civil Litigation, David J. Hacker, Special Counsel for Civil Litigation, *for* Ken Paxton, Attorney General of Texas, Austin, Texas; Steve Marshall, Attorney General of Alabama; Leslie Rutledge, Attorney General of Arkansas; Christopher M. Carr, Attorney General of Georgia; Jeff Landry, Attorney General of Louisiana; Paul R. LePage, Governor of Maine; Phil Bryant, Governor of Mississippi; Doug Peterson, Attorney General of Nebraska; Mike Hunter, Attorney General of Oklahoma; Alan Wilson, Attorney General of South Carolina; Brad Schimel, Attorney General of Wisconsin, *for Amici Curiae* States of Alabama, Arkansas, Georgia, Louisiana, Nebraska, Oklahoma, South Carolina, Texas, and Wisconsin, and Phil Bryant, Governor of Mississippi and Paul R. LePage, Governor of Maine *in support of Plaintiff-Appellant*.

Megan L. Brown, Richard W. Smith, Wiley Rein LLP, Washington, District of Columbia, *for Amici Curiae* National Association of Manufacturers and Chamber of Commerce of the United States of America *in support of Plaintiff-Appellant*.

Shanna M. Cleveland, Ronald A. Fein, Lisa Danetz, Free Speech for People, Newton, Massachusetts, and Steven H. Shiffrin, Cornell Law School, Ithaca, New York, *for Amici Curiae* Michael C. Dorf, Robert S. Stevens Professor of Law, Cornell Law School; Daniel J.H. Greenwood, Professor of Law, Deane School of Law, Hofstra University; Steven Heyman, Professor of Law, Chicago-Kent College of Law; Robert Kerr, Edith Kinney Gaylord Presidential Professor, Gaylord College, University of Oklahoma; Douglas Kysar, Deputy Dean and Joseph M. Field '55 Professor of Law, Yale Law School; Helen Norton, Professor and Ira C. Rothgerber, Jr. Chair in Constitutional Law, University of Colorado School of Law; Tamara R. Piety, Professor of Law, University of Tulsa, College of Law; Frank Pasquale, Professor of Law, University of Maryland; Catherine J. Ross, Fred C. Stevenson Research Professor, George Washington University Law School; and Laurence H. Tribe, Carl M. Loeb University Professor and Professor of Constitutional Law, Harvard Law School *in support of Defendants-Appellees*.

Edward Notis-McConarty, M. Patrick Moore, Jr., Vanessa A. Arslanian, Hemenway & Barnes LLP, Boston, MA, *for Amici Curiae* Martha Coakley, Thomas Reilly, Scott Harshbarger, James M. Shannon, and Francis X. Bellotti, Former Attorneys General of Massachusetts *in support of Defendants-Appellees*.

Jillian A. Lazar, Director of Investor Protection, Marion Quirk, Joseph E. Gibbs-Tabler, Deputy Attorneys General, *for* Matthew P. Denn, Attorney General of Delaware, Wilmington, Delaware;

Benjamin Gutman, Solicitor General, Adam Holbrook, Assistant Attorney General, *for* Ellen F. Rosenblum, Attorney General of Oregon, Salem, Oregon; Xavier Becerra, Attorney General of California, Sacramento, California; George Jepsen, Attorney General of Connecticut, Hartford, Connecticut; Russell A. Suzuki, Attorney General of Hawaii, Honolulu, Hawaii; Lisa Madigan, Attorney General of Illinois, Chicago, Illinois; Thomas J. Miller, Attorney General of Iowa, Des Moines, Iowa; Janet T. Mills, Attorney General of Maine, Augusta, Maine; Brian E. Frosh, Attorney General of Maryland, Baltimore, Maryland; Lori Swanson, Attorney General of Minnesota, St. Paul, Minnesota; Jim Hood, Attorney General of Mississippi, Jackson, Mississippi; Gurbir S. Grewal, Attorney General of New Jersey, Trenton, New Jersey; Hector Balderas, Attorney General of New Mexico, Santa Fe, New Mexico; Joshua H. Stein, Attorney General of North Carolina, Raleigh, North Carolina; Josh Shapiro, Attorney General of Pennsylvania, Harrisburg, Pennsylvania; Peter F. Kilmartin, Attorney General of Rhode Island, Providence, Rhode Island; Thomas J. Donovan, Jr., Attorney General of Vermont, Montpelier, Vermont; Mark R. Herring, Attorney General of Virginia, Richmond, Virginia; Robert W. Ferguson, Attorney General of Washington, Olympia, Washington; Karl A. Racine, Attorney General for the District of Columbia, Washington, District of Columbia, *for Amici Curiae* States of California, Connecticut, Delaware, Hawaii, Illinois, Iowa, Maine, Maryland, Minnesota, Mississippi, New Jersey, New Mexico, North Carolina, Oregon, Pennsylvania, Rhode Island, Vermont, Virginia,

Washington, and the District of Columbia *in support of Defendants-Appellees.*

RICHARD J. SULLIVAN, *Circuit Judge*:

Plaintiff-Appellant Exxon Mobil Corporation ("Exxon") appeals from a judgment of the United States District Court for the Southern District of New York (Caproni, *J.*), dismissing its complaint against Defendants-Appellees Maura Healey, in her official capacity as Attorney General of Massachusetts, and Letitia James, in her official capacity as Attorney General of New York, and denying leave to amend the complaint as futile. The case, which developed a complex procedural background before reaching the Southern District of New York, first originated in 2016 when Exxon sued the attorneys general of New York and Massachusetts (the "states") under 18 U.S.C. §§ 1983 and 1985 – and their state-law analogs – principally seeking an order barring those states from investigating whether Exxon misled investors and the public regarding the company's knowledge about climate change. Among other things, Exxon alleged that the states' investigations into Exxon's purportedly deceptive speech concerning climate change were motivated by viewpoint discrimination and violated Exxon's constitutional rights.

6

In 2018, the district court dismissed Exxon's claims against the Massachusetts Attorney General, finding that the lawsuit was precluded by res judicata because Exxon had litigated or could have litigated the present claims in an earlier state proceeding. It dismissed Exxon's claims against the New York Attorney General for failure to state a claim and denied as futile Exxon's motion for leave to file a second amended complaint.

On appeal, Exxon challenges both grounds for dismissal and the denial of leave to amend, contending that it stated plausible constitutional claims which were not barred by res judicata as to the Massachusetts Attorney General. Exxon also more specifically argues that the district court failed to address Exxon's viewpoint discrimination claim, improperly analyzed Exxon's allegations and demanded evidence, and drew inferences in favor of the Attorneys General. During the pendency of the appeal, the New York Attorney General concluded the New York investigation after commencing an enforcement action, which eventually resulted in a judgment in Exxon's favor. We therefore grant the New York Attorney General's motion to dismiss the appeal on the ground that Exxon's claims against her are moot. We also affirm the district court's determination that

Exxon's claims against the Massachusetts Attorney General are precluded by the doctrine of res judicata.

## I. BACKGROUND

### A. State Court Investigations

In 2015 and 2016, respectively, the Attorneys General of New York and Massachusetts commenced investigations into "whether ExxonMobil committed consumer or securities fraud by misrepresenting its knowledge of climate change." J. App'x at 396. In November 2015, the New York Attorney General (then-Attorney General Eric Schneiderman) served Exxon with a subpoena seeking documents and communications related to its research on climate change. In April 2016, the Massachusetts Attorney General served a Civil Investigative Demand (the "CID") to investigate potential violations of Section 2 of Massachusetts General Laws chapter 93A, which prohibits "unfair or deceptive acts or practices" in "trade or commerce." J. App'x at 1026. The CID focused on the marketing and sale of fossil fuel products to Massachusetts consumers, and on the marketing and sale of Exxon securities to investors.

The New York Attorney General sought additional documents related to the ongoing investigation in the fall of 2016. Although Exxon initially produced

documents in response to both New York subpoenas, the New York Attorney General moved to compel further compliance with the 2015 subpoena in November 2016.  Shortly thereafter, Justice Barry R. Ostrager, who oversaw that proceeding, set a deadline for Exxon to complete production.  Exxon subsequently certified compliance with the November 2015 subpoena.

## B.  Exxon's Federal Action in the Northern District of Texas

On June 15, 2016, Exxon filed a complaint against Massachusetts Attorney General Healey in the United States District Court for the Northern District of Texas (Kinkeade, *J.*) seeking declaratory and injunctive relief under Texas and federal law.  Among other things, Exxon sought to enjoin the CID, alleging that the Massachusetts investigation was pretextual and violated the dormant Commerce Clause and Exxon's rights under the First Amendment, its right to be free of unreasonable searches under the Fourth Amendment, and its due process rights under the Fourteenth Amendment.  Exxon moved for a preliminary injunction, while Attorney General Healey cross-moved to dismiss.  The district court sua sponte ordered certain jurisdictional discovery relevant to Attorney General Healey's motion to dismiss.

Exxon filed an amended complaint on November 10, 2016, adding then-

9

Attorney General Schneiderman as a defendant and including allegations pertaining to the New York investigation. In addition to asserting various constitutional claims, Exxon also alleged that the two Attorneys General conspired to silence and intimidate one side of the climate policy debate through pretextual investigations. In support of its claims that the Attorneys General were biased and conducted investigations with improper political motives, Exxon pointed to, among other things, public comments made by both Attorneys General at an "AGs United for Clean Power" conference. Exxon also alleged that the two offices received private presentations from climate activists and lawyers, who enlisted the public officials to utilize state investigative authority to bring fossil fuel companies' internal corporate documents to light. The Attorneys General eventually moved to dismiss Exxon's amended complaint.

In December 2016, the Northern District of Texas court stayed its prior jurisdictional discovery order, and, following the Fifth Circuit's denial of the Massachusetts Attorney General's petition for a writ of mandamus, ordered briefing on its ability to exercise personal jurisdiction over the Attorneys General.

### C. Exxon's Petition in Massachusetts State Court

On June 16, 2016, one day after Exxon filed its original complaint against the

10

Massachusetts Attorney General in Texas, Exxon separately petitioned a Massachusetts Superior Court to set aside the CID and disqualify Attorney General Healey. In that petition, Exxon contended – among other things – that the CID violated state constitutional protections for free speech and freedom from unreasonable searches, and that the CID was arbitrary and capricious.

Acknowledging that its petition raised issues that potentially overlapped with those in its federal suit, Exxon requested that the Massachusetts Superior Court grant a stay pending the outcome of the federal litigation in Texas. The Massachusetts Attorney General cross-moved to compel Exxon to comply with the CID.

On January 11, 2017, the Massachusetts Superior Court denied Exxon's petition to set aside the CID and granted the Massachusetts Attorney General's motion to compel. The Superior Court rejected Exxon's assertion that the Attorney General's actions constituted political bias or viewpoint discrimination rising to the level of arbitrary and capricious conduct, determining instead that the Attorney General had "assayed sufficient grounds – her concerns about Exxon's possible misrepresentations to Massachusetts consumers – upon which to issue the CID" and thus acted in good faith. J. App'x at 1017; *see id.* at 1016. But the

11

court declined to consider Exxon's free speech claim at that time, reasoning that the Attorney General was still investigating whether Exxon's statements or omissions in communications to consumers were misleading or deceptive, and that misleading or deceptive speech would not be "entitled to any free speech protection." *Id.* at 1017 n.2. The court also denied Exxon's motion to disqualify Attorney General Healey, finding that her comments about the investigation at the "AGs United for Clean Power" conference did not reveal bias.

On February 8, 2017, Exxon appealed the Superior Court's order. In April 2018, the Supreme Judicial Court of Massachusetts ("SJC") affirmed the Superior Court's decision. On January 7, 2019, the United States Supreme Court denied Exxon's petition for a writ of certiorari to review the SJC's decision.

**D. Transfer of the Federal Action to the Southern District of New York**

On March 29, 2017, while the Massachusetts action was pending, Judge Kinkeade sua sponte transferred the federal case from the Northern District of Texas to "the proper venue" – the Southern District of New York – where it was assigned to Judge Caproni. J. App'x at 988–1001. After receiving additional briefing on the Attorneys General's motions to dismiss and Exxon's cross-motion to amend its complaint, the district court (Caproni, *J.*) issued an order on March

12

29, 2018, dismissing the amended complaint with prejudice and denying Exxon's request for leave to amend as futile. Although the court found that Exxon's claim was ripe and that it had personal jurisdiction over the Massachusetts Attorney General, it held that Exxon's claims against the Massachusetts Attorney General were barred by res judicata – also known as claim preclusion – since Exxon could have raised those claims in the Massachusetts proceeding. As to Exxon's remaining causes of action against the New York Attorney General, the court dismissed those claims pursuant to Federal Rule of Civil Procedure 12(b)(6), concluding that Exxon had failed to plead an improper motive – a prerequisite for each of Exxon's constitutional claims.

## E. Appeal of District Court's Dismissal

Exxon timely appealed, challenging both the dismissal of its claims and the denial of its motion to amend. Exxon asserts that it stated plausible constitutional claims that were not barred by res judicata, and that the district court failed to address Exxon's viewpoint discrimination claim, incorrectly analyzed Exxon's allegations, wrongly demanded evidence at the pleading stage, and improperly drew inferences in favor of the Attorneys General.

After the merits briefing on appeal concluded, the New York Attorney

13

General closed the New York investigation and brought an enforcement action against Exxon in state court alleging "that Exxon engaged in a scheme to deceive investors and the investment community about the risks posed to its business by climate change regulation," in violation of New York law. *See* Dkt. 190 ("MTD") at 5 (internal quotation marks omitted).

The New York Attorney General then moved in this Court to dismiss the appeal as moot, arguing that because the Attorney General had ended the investigation on which Exxon's claims are based, there was no longer a live controversy capable of redress. Exxon opposed the motion on several grounds, including its contention that a live controversy still existed because the relief sought in the federal action would prevent the New York Attorney General from using wrongfully obtained documents in the state enforcement action. Exxon also contended that the New York Attorney General's termination of the investigation fell under mootness exceptions for voluntary cessation of challenged conduct and conduct capable of repetition but evading review. The New York Attorney General's motion was referred to this panel to be considered with Exxon's appeal from the district court's ruling.

After the parties completed briefing on the motion to dismiss in this Court,

14

the state enforcement action proceeded to trial in the Commercial Division of the New York State Supreme Court. On December 10, 2019, after a twelve-day trial, Justice Ostrager issued a thirty-one-page decision in Exxon's favor. *See People v. Exxon Mobil Corp.*, 119 N.Y.S.3d 829, 2019 WL 6795771 (N.Y. Sup. Ct. Dec. 10, 2019). Among other things, Justice Ostrager concluded that, after an extensive three-and-a-half-year investigation and pre-trial discovery period during which Exxon produced "millions of pages of documents and dozens of witnesses for interviews and depositions," *id.* at *1, the New York Attorney General "failed to prove [at trial], by a preponderance of the evidence, that ExxonMobil made any material misstatements or omissions about its practices and procedures that misled any reasonable investor," *id.* at *30. Justice Ostrager further emphasized that the New York Attorney General had not produced "testimony . . . from any investor who claimed to have been misled by any [of Exxon's] disclosure[s], even though the Office . . . had previously represented it would call such individuals as trial witnesses." *Id.* On January 24, 2020, the New York Attorney General represented she would not appeal Justice Ostrager's ruling, and the time in which to do so has since expired.

On October 24, 2019 – while this appeal was pending and the New York trial

15

was in its third day of testimony – the Massachusetts Attorney General filed a civil complaint against Exxon under the Consumer Protection Act. That action, which was removed to federal court and has since been remanded to state court, is still ongoing. *See Commonwealth v. Exxon Mobil Corp.*, No. 1984CV03333BLS1, 2021 WL 3493456, at *1 (Mass. Super. Ct. June 22, 2021) (denying Exxon's motion to dismiss).

## II. DISCUSSION

On appeal, Exxon challenges the district court's dismissal on all grounds. Although both Attorneys General contend that the district court properly dismissed Exxon's complaint for failure to state a claim, the New York Attorney General raises a threshold question of mootness, arguing that there is no live controversy because the New York investigation and related trial have concluded. For her part, the Massachusetts Attorney General maintains that Exxon's claims are precluded under the doctrine of res judicata, as those claims could have been raised in the Massachusetts Superior Court action. We are persuaded that the appeal as to the New York Attorney General is moot and that res judicata bars Exxon's claims against the Massachusetts Attorney General, and therefore affirm in part and dismiss in part on those grounds.

## A.     The Appeal Is Moot as to the New York Attorney General.

Because our jurisdiction is constitutionally limited to "actual, ongoing cases or controversies," a party must at all stages have "an actual injury . . . likely to be redressed by a favorable judicial decision." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990); *see also Mangouras v. Squire Patton Boggs*, 980 F.3d 88, 96 (2d Cir. 2020). The parties must retain a continued "personal stake in the outcome," even on appeal, leaving us to resolve only "real and substantial controversies admitting of specific relief" rather than issue decisions "advising what the law would be upon a hypothetical state of facts." *Lewis*, 494 U.S. at 477–78 (brackets and internal quotation marks omitted). "A moot action therefore must be dismissed, even if the case was live at the outset but later events rendered it moot on appeal." *N.Y.C. Emps.' Ret. Sys. v. Dole Food Co.*, 969 F.2d 1430, 1433 (2d Cir. 1992); *see also Haley v. Pataki*, 60 F.3d 137, 141 (2d Cir. 1995) ("[I]t is axiomatic that there must be a continuing controversy capable of redress by this Court.").

A live controversy remains as long as "a court can fashion *some* form of meaningful relief" to award the complaining party, and even "[t]he availability of [a] *possible* remedy is sufficient to prevent [a] case from being moot." *Church of Scientology v. United States*, 506 U.S. 9, 12–13 (1992) (second emphasis added). This

17

inquiry is more complicated in cases involving states or state agents as defendants – like this one – since the Eleventh Amendment bars the award of money damages against state officials in their official capacities. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–03 (1984). The Supreme Court has made clear that, pursuant to the doctrine first articulated in *Ex parte Young*, 209 U.S. 123 (1908), a plaintiff may bring claims against a state official acting in her official capacity only if he alleges an "ongoing violation of federal law and seeks [injunctive] relief properly characterized as prospective." *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (internal quotation marks omitted); *see Ford v. Reynolds*, 316 F.3d 351, 355 (2d Cir. 2003). Accordingly, for this case to remain live, there must be a possible effectual remedy for the violations it alleges, and the remedy must be prospective relief that would address an ongoing violation of federal law.

With respect to its claims against the New York Attorney General, Exxon commenced the federal action principally to enjoin an investigation that has now concluded. Additionally, the enforcement action that the New York Attorney General brought based on that investigation has been resolved in Exxon's favor. In light of these developments, Exxon cannot now obtain the prospective relief it

18

requested in its operative complaint (to enjoin enforcement of the New York Attorney General's November 2015 subpoena) or in its proposed amended complaint (to enjoin the New York Attorney General's investigation generally). Put simply, the Court cannot enjoin what no longer exists. *See Browning Debenture Holders' Comm. v. DASA Corp.*, 524 F.2d 811, 814 (2d Cir. 1975) ("[I]t is . . . impossible to enjoin the meeting already held."); *see also Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 670 (1993) (O'Connor, *J.*, dissenting) (explaining that "challenges to legislation that . . . has been repealed, where the plaintiff has sought only prospective relief," are moot because "[i]f the challenged statute no longer exists . . . an order enjoining its enforcement would be meaningless"). The question before us, then, is whether under these circumstances Exxon retains "some interest" in the case it brought, "so that a decision in its favor will inure to its benefit." *New England Health Care Emps. Union, Dist. 1199, SEIU AFL–CIO v. Mount Sinai Hosp.*, 65 F.3d 1024, 1029 (2d Cir. 1995).

Although Exxon concedes that the New York investigation and subsequent enforcement action have concluded, it nevertheless insists that there are additional injunctive remedies that would constitute prospective relief for the alleged

19

violations. These include (1) the return or destruction of documents that Exxon produced during the course of the investigation, (2) the issuance of an affirmative injunction directing the New York Attorney General to curtail the policies that led to the issuance of the offensive subpoenas in the first place, and (3) declaratory relief stating "that the [New York Attorney General's] investigation of ExxonMobil violated its constitutional rights." Dkt. 203 ("Exxon MTD Opp'n") at 17–19.

To be sure, the conclusion of an investigation will not ordinarily moot a challenge to a subpoena if a court can order "meaningful relief" by, for example, "ordering the . . . return [of] records" provided during the investigation. *Church of Scientology*, 506 U.S. at 12–13 (contemplating the return of documents as meaningful relief in a case involving the possession of specific materials sought by subpoena). We have also recognized that subpoena compliance does not necessarily moot an appeal of an order enforcing a subpoena, since respondents maintain a privacy interest in the documents they have produced and would be entitled to their return if successful. *See Washington Nat'l Ins. Co. v. OBEX Grp. LLC*, 958 F.3d 126, 133 (2d Cir. 2020); *accord Life Receivables Tr. v. Syndicate 102 at Lloyd's of London*, 549 F.3d 210, 214 n.4 (2d Cir. 2008) (acknowledging that a privacy interest in discovered documents remains even after compliance with a subpoena);

20

*United States v. Constr. Prods. Rsch., Inc.*, 73 F.3d 464, 469 (2d Cir. 1996) (noting in dicta that respondents to a subpoena had a privacy interest in the return of surrendered documents and that the case was not moot because respondents still contested the government actor's authority to have issued the subpoena). But this precedent is of no moment here, since the record reflects that Exxon stipulated to a process by which the New York Attorney General would destroy or return confidential documents that Exxon produced in the investigation and enforcement action. *See* MTD, Mot. App'x at 150–61 ("Stipulation").

Under the terms of the Stipulation, which was executed by the parties and ordered by the judge in the New York enforcement proceeding, Exxon agreed to a process by which it could designate materials as confidential, in which case the documents – including "all reproductions thereof" – would be returned or destroyed at the conclusion of the action. *See id.* at 159. While the Stipulation also permitted opposing counsel to retain certain materials such as work product, Exxon agreed to that carve-out and has not suggested that it did not voluntarily enter the Stipulation. Similarly, although the Stipulation is "without prejudice to the rights of" either party "to move for relief from any of its provisions, or to seek or agree to different or additional protection for any particular material or

21

information," *id.* at 160, the mere possibility that a party may seek some undisclosed form of additional relief – the likelihood of which has not been shown – does not change the fact that Exxon has already obtained by stipulation a binding commitment from the New York Attorney General to provide the very relief that Exxon now claims to seek. As we have previously recognized, assurances made in stipulations that agree to provide the relief sought leaves this Court without a role with respect to such relief, particularly where there is "no indication that [the] understanding [between the parties] has . . . been breached." *Sanders v. Wyman*, 464 F.2d 488, 490–91 (2d Cir. 1972) (dismissing appeal as moot where the defendants signed a stipulation and order prohibiting them from disclosing confidential information and social service records of welfare recipients to a housing authority without the recipients' permission, and plaintiffs did not show future risk of the same harm or that defendants had threatened noncompliance with the stipulation and order); *cf. Hewitt v. Helms*, 482 U.S. 755, 761 (1987) ("The real value of the judicial pronouncement — what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion — is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff.*" (emphasis in original)). The Stipulation therefore provides

22

the very relief that Exxon purports to seek from the Court, eliminating any possibility that this Court could fashion prospective relief to address an ongoing violation of federal law.[1]

As to Exxon's belated proposals of alternative forms of injunctive relief, we easily reject them as speculative and not sufficiently tied to an ongoing injury. For example, Exxon does not even attempt to explain how the imposition of a monitor "to ensure that continued viewpoint bias does not influence [the New York Attorney General's] decision to use official power against ExxonMobil" would cure an *ongoing* violation. Exxon MTD Opp'n at 19. Exxon has not alleged any facts to suggest continuing harms from the now-ceased investigation and resolved enforcement action, and the alternative relief that it seeks could only address entirely hypothetical future harms; therefore, we conclude that Exxon's new arguments for alternative equitable remedies cannot overcome the obvious mootness of Exxon's claims.

---

[1] During oral argument, Exxon asserted that the New York Attorney General has not yet returned or destroyed Exxon's documents as required under the stipulation. Oral Argument at 1:09–4:33 (Feb. 18, 2020). In response, the New York Attorney General represented to the Court that she had not done so because the Attorney General was subject to a litigation hold pursuant to the Stipulation. *Id.* at 16:40–17:11; Stipulation at 160. Given that the parties voluntarily entered into a stipulation that includes a process overseen by Justice Ostrager to adjudicate the return or destruction of documents, the fact that this process was apparently not complete at the time of argument will not alter our conclusion.

Nor does Exxon's request for a declaratory judgment constitute a claim for prospective relief for an ongoing constitutional violation. In *Green v. Mansour*, the Supreme Court made clear that a request for a declaratory judgment as to a past violation cannot itself establish a case or controversy to avoid mootness. 474 U.S. 64, 73–74 (1985); *see also McGinty v. New York*, 251 F.3d 84, 101 (2d Cir. 2001). Again, because the Attorney General's investigation is over, any declaratory judgment opining on the legality of that investigation would be "entirely retrospective because the state [is] no longer [allegedly] violating federal law." *Ward v. Thomas*, 207 F.3d 114, 119 (2d Cir. 2000); *see id.* at 120 ("Any declaration could say no more than that Connecticut had violated federal law in the past . . . [and] would have much the same effect as a full-fledged award of damages or restitution by the federal court, the latter kinds of relief being of course prohibited by the Eleventh Amendment." (internal quotation marks omitted)).[2]

Exxon nevertheless contends that its complaint is not moot because the New York Attorney General's termination of the New York investigation falls within one of the exceptions to the mootness doctrine – as either a voluntary cessation of

[2] Exxon's claimed need for a declaratory injunction is particularly curious given Justice Ostrager's written opinion in the enforcement action. As discussed above, Justice Ostrager issued a final order in favor of Exxon, definitively rejecting the New York Attorney General's enforcement action against Exxon. *See Exxon Mobil Corp.*, 119 N.Y.S.3d 829, 2019 WL 6795771, at *30.

24

allegedly unlawful activity that may be freely resumed or as conduct that is "capable of repetition while evading judicial review." Exxon MTD Opp'n at 6. We disagree.

Generally, the "voluntary cessation of allegedly illegal conduct" is not enough to render a case moot. *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953). Otherwise, a defendant might "strategically alter its conduct in order to prevent or undo a ruling adverse to its interest." *E.I. Dupont de Nemours & Co. v. Invista B.V.*, 473 F.3d 44, 47 (2d Cir. 2006). Nevertheless, a case involving such voluntary cessation may be moot where "there is no reasonable expectation" of the alleged violation's recurrence, and interim events have "completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (internal quotation marks omitted).

Exxon initially argued that the voluntary cessation exception applied because the New York Attorney General made the decision to terminate the investigation while continuing to reserve a right to seek discovery, and to utilize the previously produced documents, in the civil enforcement action. In the interim, of course, the enforcement action itself has concluded in Exxon's favor, and both parties have stipulated to the return or destruction of all documents

25

produced by Exxon during the investigation. Under these circumstances, interim events have "completely and irrevocably eradicated the effects of the [New York Attorney General's] alleged violation," *id.*, and it cannot be seriously argued that there is a reasonable expectation of the alleged violation's recurrence.

Nor can Exxon succeed in arguing that the conduct is "capable of repetition, yet evading review." *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 647 (2d Cir. 1998). For this exception to apply, (1) the plaintiff must have a "reasonable expectation" that it will be subject to the same challenged action again, and (2) the challenged conduct must be of "too short [a duration] to be fully litigated" before its cessation. *Id.* at 647–48. "This facet of the mootness doctrine . . . is applicable only in exceptional situations." *Dennin v. Conn. Interscholastic Athletic Conf., Inc.*, 94 F.3d 96, 101 (2d Cir. 1996) (internal quotation marks omitted).

Exxon has failed to establish a reasonable expectation that the conduct at issue in the present suit will recur, principally because the New York Attorney General's investigation *and* lawsuit have concluded; indeed, the state action was resolved in Exxon's favor, and the New York Attorney General did not appeal. There is simply no rational basis to assume that the New York Attorney General is poised to pursue a subsequent fraud investigation involving the same alleged

26

misconduct. *Dennin*, 94 F.3d at 100–01 (observing that "mere speculation that the parties will be involved in a dispute over the same issue does not rise to the level of a 'reasonable expectation' or 'demonstrated probability' of recurrence" (internal quotation marks omitted)); *Haley*, 60 F.3d at 141 (stating that "the mere 'theoretical possibility' that this scenario will arise again is not sufficient for the capable-of-repetition exception to apply"); *Knaust v. City of Kingston*, 157 F.3d 86, 88 (2d Cir. 1998) (explaining that it will not "suffice to hypothesize the possibility that at some future time, under circumstances that could only be guessed at now, the parties could theoretically become embroiled in a like controversy once again").

Exxon's insistence that the New York Attorney General "continues to defend the legality" of the office's conduct does not alter our analysis. Exxon MTD Opp'n at 9 (internal quotation marks omitted). Among other things, Exxon contends that a press release issued by the New York Attorney General following the New York court ruling contains politically motivated statements and demonstrates that the Attorney General "continues to defend the legality and propriety of its unconstitutional efforts to restrict speech, and . . . promises more of the same." Dkt. 286 at 2. But the broad statement in the press release – proclaiming that the Attorney General "will continue to fight to ensure companies

are held responsible for actions that undermine and jeopardize the financial health and safety of Americans across our country[] and . . . to end climate change," *id.* at 61 – is too generic to create a reasonable expectation that another allegedly pretextual investigation will recur. That is particularly true in light of the New York Attorney General's decision not to appeal the state court decision, leaving as final and conclusive the state court's ruling that the evidence developed as a result of the New York Attorney General's investigation was insufficient to subject Exxon to state fraud liability. *See Haley*, 60 F.3d at 141 (rejecting as "entirely speculative" the prospect that "a battle over the budget will occur next year" yet evade review due to its transitory nature where that prospect was based on an assumption that "the same principals will be involved in [the] next year's budget process" (internal quotation marks omitted)).

Nor can it be said that the New York Attorney General's conduct was too short-lived to be fully litigated before it ceased. To the contrary, Exxon's complaints about that conduct were fully litigated in the state court, which granted a resounding victory for Exxon in a final judgment that the New York Attorney

28

General chose not to appeal, making further litigation of the federal issues wholly unnecessary.

Finally, Exxon argues that even if this appeal is moot, the Court should remand with instructions to the district court to vacate its dismissal of Exxon's complaint to avoid "giving preclusive effect to a judgment never reviewed by an appellate court." Exxon MTD Opp'n at 22 (internal quotation marks omitted) (quoting *Dole Food*, 969 F.2d at 1435). As the Supreme Court stated in *United States v. Munsingwear, Inc.*, we ordinarily vacate the ruling that was the subject of the appeal if mootness occurs through the unilateral action of the party prevailing below – in this case, the New York Attorney General – or through circumstances unattributable to either party. 340 U.S. 36, 39–41 (1950); *but see U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 23, 25, 29 (1994) (noting that *Munsingwear*'s description of the "'established practice' for vacatur was dictum" and holding that it is generally inapplicable in the context of settlement). We need not vacate, however, where "the party seeking relief from the judgment below caused the mootness by voluntary action." *Doe v. Gonzales*, 449 F.3d 415, 420 (2d Cir. 2006) (internal quotation marks omitted); *see U.S. Bancorp Mortg. Co.*, 513 U.S. at 26, 29 (holding that, barring exceptional circumstances, "mootness by reason of

29

settlement does not justify vacatur of a judgment under review" because "[i]t is [the] petitioner's burden, as the party seeking relief from the status quo of the appellate judgment, to demonstrate not merely equivalent responsibility for the mootness, but equitable entitlement to the extraordinary remedy of vacatur").

Here, Exxon's appeal was rendered moot by Exxon's insistence in proceeding to trial in the New York enforcement action, the Attorney General's decision not to appeal Justice Ostrager's ruling in favor of Exxon, and the parties' mutual agreement and stipulation to the process for the return or destruction of documents produced by Exxon prior to trial. In situations where "mootness is neither happenstance, nor attributable to one party but not the other," courts are directed to exercise discretion in determining whether to vacate. *Mfrs. Hanover Tr. Co. v. Yanakas*, 11 F.3d 381, 383–84 (2d Cir. 1993) (internal citations omitted). In doing so, we "look at the equities of the individual case," *Hassoun v. Searls*, 976 F.3d 121, 130 (2d Cir. 2020) (internal quotation marks omitted), and require that the party seeking vacatur meet its burden of demonstrating entitlement to vacatur, *see U.S. Bancorp Mortg. Co.*, 513 U.S. at 26.

The equities do not favor vacatur in this case. While the New York Attorney General ultimately had final control over whether to cease the New York

30

investigation, both parties knowingly pursued the trial of the enforcement action with vigor. Indeed, while this appeal was pending, "Exxon stopped agreeing to toll the limitations period for [the New York Attorney General] to bring an enforcement action," compelling her to commence the action before Justice Ostrager in the Commercial Division. Dkt. 207 ("MTD Reply") at 14. Throughout that action, Exxon pressed "to try the case in 2019" and was "delighted that [the court was] going to move the case." MTD, Mot. App'x at 107. Indeed, Exxon "promise[d]" the state court that the parties would "come back with an expedited trial schedule." *Id.* Given these facts, we conclude that the New York Attorney General was not solely responsible in mooting the appeal.

To be clear, Exxon's actions in nudging this case toward potential mootness were by no means improper, and we do not suggest that Exxon engaged in any sort of gamesmanship – only that the likely consequences of its litigation strategy, including the mootness of this appeal, were obvious. In essence, Exxon pursued a two-front campaign in which a victory in either court would achieve its objectives.

Having framed its federal complaint around the harms allegedly caused by the New York Attorney General's investigation, Exxon should have understood that its voluntary actions in state court – which, again, facilitated the end of the

31

complained-of investigation and opened to Exxon the now-realized possibility of prevailing on the enforcement action – risked mooting this appeal. *See U.S. Bancorp Mortg. Co.*, 513 U.S. at 29 (declining to grant vacatur where party seeking relief from adverse decision participated in actions that mooted dispute on appeal); *Russman v. Bd. of Educ. of Enlarged City Sch. Dist. of Watervliet*, 260 F.3d 114, 121–23 (2d Cir. 2001) (noting that an appellant's conduct can "constitute 'forfeiture' of the benefit of vacatur" where it "knew or should have known that his conduct was substantially likely to moot the appeal"); *see also In re W. Pac. Airlines, Inc.*, 181 F.3d 1191, 1194, 1197–98 (10th Cir. 1999) (declining to vacate orders at issue in the appeal in part because appellants "contribut[ed] to the mootness of th[e] appeal by failing to seek a stay" pending review of bankruptcy court order).

Under these circumstances, and bearing in mind that "[j]udicial precedents are presumptively correct[,] . . . valuable to the legal community as a whole," and "should stand unless a court concludes that the public interest would be served by a vacatur," *U.S. Bancorp Mortg. Co.*, 513 U.S. at 26, we are not persuaded that Exxon has carried its burden to show that it is equitably entitled to the "extraordinary

remedy of vacatur," *id.; see also Doe*, 449 F.3d at 420–21.  We therefore dismiss the appeal as to the New York Attorney General.

### B.     Exxon's Claims Against the Massachusetts Attorney General Are Precluded.

With respect to its claims against the Massachusetts Attorney General, Exxon argues that "[r]es judicata does not apply . . . because the claims asserted in [the federal] action were not raised in or decided by the Massachusetts state court." Exxon Br. at 54.  During oral argument, Exxon stressed that res judicata is concerned with "claim" preclusion and not "argument" preclusion, leaving Exxon free to raise constitutional arguments in state court to set aside the CID while preserving its constitutional claims in federal court to enjoin the CID's enforcement.  Again, we disagree.

Federal courts are required to "give preclusive effect to state-court judgments whenever the courts of the [s]tate from which the judgments emerged would do so." *Allen v. McCurry*, 449 U.S. 90, 96 (1980).  In Massachusetts, a prior court decision may have claim-preclusive effect when there is "(1) the identity or privity of the parties to the present and prior actions, (2) identity of the cause of action, and (3) [a] prior final judgment on the merits." *Kobrin v. Bd. of Registration in Med.*, 444 Mass. 837, 843 (2005) (citation omitted).  Importantly, under

33

Massachusetts law, res judicata "prevents relitigation of all matters that . . . could have been adjudicated," not just those that were. *Id.* (citation omitted).

Applying these principles to the two actions before us, we agree with the district court that all three elements of the res judicata test have been satisfied here.

*1. The Parties in the Massachusetts and Federal Actions Are Identical.*

Neither Exxon nor the Massachusetts Attorney General disputes that there is a complete identity of the parties in the two actions. On June 15, 2016, Exxon filed its federal complaint against the Massachusetts Attorney General in the Northern District of Texas; a day later, it commenced an action in Massachusetts Superior Court to set aside the CID and disqualify Attorney General Healey. Accordingly, the first element of the res judicata test is clearly satisfied.

*2. The Proceedings Raise Identical Claims.*

Claims share identity when they "grow[] out of the same transaction, act, or agreement, and seek[] redress for the same wrong." *Fassas v. First Bank & Tr. Co. of Chelmsford*, 353 Mass. 628, 629 (1968) (quoting *Mackintosh v. Chambers*, 285 Mass. 594, 596 (1934)). Claims can be identical for preclusion purposes even if raised from "different posture[s] or in . . . different procedural form[s]." *Wright Mach. Corp. v. Seaman-Andwall Corp.*, 364 Mass. 683, 688 (1974). In fact, claim preclusion

34

may apply even when a claim has not been actually litigated in a prior proceeding, as long as the claim *could* have been litigated in that first proceeding. *See U.S. Nat'l Ass'n v. McDermott*, 87 Mass. App. Ct. 1103, 2015 WL 539311, at *1–2 (Jan. 30, 2015). Parties cannot skirt res judicata merely "by seeking an alternative remedy," *Wright Mach. Corp.*, 364 Mass. at 688, as "[t]he statement of a different form of liability is not a different cause of action," *Fassas*, 353 Mass. at 629 (internal quotation marks omitted). That is because "[t]he effect of a former judgment . . . depends not upon the form of the pleadings but upon the essence of the violation of legal right on which pleadings are founded." *Mackintosh*, 285 Mass. at 597.

Although raised in distinct procedural forms, Exxon's state court petition and federal complaint both concern the same essential violations of legal rights. Both identify the same relevant injury: the CID's alleged violation of various federal constitutional provisions and their state analogues. For example, in its state court petition to set aside the CID, Exxon alleged that "the CID constitutes impermissible viewpoint discrimination by targeting ExxonMobil's climate change speech." J. App'x at 1044. Similarly, in its first amended complaint in the

federal case, Exxon alleged that "the CID [is an] impermissible viewpoint-based restriction[] on speech." *Id.* at 434.[3]

Moreover, the facts "relied upon to prove liability are essentially the same as to both cases." *Ratner v. Rockwood Sprinkler Co.*, 340 Mass. 773, 776 (1960). As the district court recognized, both sets of claims find support in overlapping facts, including, among other things, allegations that (1) the New York and Massachusetts Attorneys General joined the "AGs United for Clean Power" conference, (2) climate activists gave private presentations to the Attorneys General, (3) the Attorneys General publicly spoke with bias against Exxon, and (4) the Attorneys General initiated overreaching and politically motivated investigations in bad faith. *See Exxon Mobil Corp. v. Schneiderman*, 316 F. Supp. 3d

---

[3] *See also* J. App'x at 1044 (alleging in the state petition that "in violation of ExxonMobil's rights under Article XIV of the Massachusetts Constitution, the CID launches an unreasonable fishing expedition"); *id.* at 434–35 (alleging in the amended federal complaint that "[t]he subpoena and CID are each unreasonable searches and seizures because each of them constitutes an abusive fishing expedition . . . [which] violate[s] the Fourth Amendment's reasonableness requirement"); *id.* at 1044 (alleging in the state petition that the CID violates Exxon's "due process right under Article XII of the Massachusetts Constitution to a disinterested prosecutor"); *id.* at 435 (alleging in the amended federal complaint that "[t]he subpoena and CID deprive ExxonMobil of due process of law by violating the requirement that a prosecutor be disinterested"). Moreover, the federal Commerce Clause claim, which does not have a Massachusetts analog, is identical for res judicata purposes to the state claims. Both sets of claims concern the purported unconstitutionality of the CID and draw from the same purportedly wrongful acts, alleging that the CID was intended to regulate Exxon's speech "while only purporting to investigate" Exxon for deceptive practices. *Id.* at 436.

679, 701–02 (S.D.N.Y. 2018). [*See also* **JA-1024–28.**]  Indeed, Exxon itself implied that the two actions involved overlapping *claims* – not merely overlapping arguments – in its state court filings.  *See* J. App'x at 1111 (requesting that the state court "defer[] considerations of claims that overlap with those presented in the federal case").[4]

The fact that the actions arose in different procedural circumstances – via an action to stop CID enforcement under Section 6(7) of Massachusetts General Laws chapter 93A in the state case versus an affirmative § 1983 claim in federal court – does not affect our analysis.  *See Wright Mach. Corp.*, 364 Mass. at 688–89.  Nor does it matter that the two actions sought nominally different remedies.  *See Tuite & Sons, Inc. v. Shawmut Bank, N.A.*, 43 Mass. App. Ct. 751, 754 (1997) (rejecting attempt to avoid res judicata by characterizing "affirmative damages" as distinct from a defensive "offset" because "the gravamen of both actions is indistinguishable").  So long as the same relief was available in the Massachusetts proceeding, the fact that Exxon opted to seek different forms of relief in the two actions is irrelevant to the issue of claim preclusion.

---

[4] Exxon makes much of the SJC's observation of "only a partial overlap in the subject matter of [the] two actions," Exxon Br. at 21 (quoting *Exxon Mobil Corp. v. Att'y Gen.*, 479 Mass. 312, 329 (2018)), but the SJC's short statement offers little insight about *which* claims in the state and federal actions overlap or the significance of the differences between the claims that do not overlap.

Exxon nevertheless insists that the "state proceedings pertained to the enforcement of a specific CID, while [the federal] action seeks an injunction of Attorney General Healey's investigation," Exxon Br. at 55, and further contends that certain declaratory and injunctive relief available for its affirmative § 1983 claims would not have been available in the "limited" CID proceeding, *id.* at 58–60.[5] But the specific relief that Exxon now claims was available only in federal court – namely, an injunction prohibiting pretextual investigations and ending the Massachusetts Attorney General's investigation – was equally available in state court. For starters, Exxon's emergency motion to set aside the CID acknowledged that its Massachusetts action "*seeks the same relief* as [the] earlier-filed [federal] action." J. App'x at 1111–12 (emphasis added). In fact, Exxon repeatedly asserted that adjudicating both actions would result in relief that was "duplicative" or would render the latter action "moot." *See id.* at 1046 (noting in CID petition that "[s]taying the adjudication of this Petition would avoid the possibility of duplicative or inconsistent rulings on ExxonMobil's constitutional challenges to

---

[5] Notably, Exxon did not seek an injunction "halting or appropriately limiting the investigations" until it proposed filing a second amended complaint. *See* J. App'x at 1983–84. The company's original complaint and first amended complaint requested only an injunction prohibiting enforcement of the CID – the very relief sought in the Massachusetts CID action. *See id.* at 84–85, 438.

38

the CID"); *id.* at 1077 (Exxon arguing in support of its motion to set aside the CID that, if granted, "the relief sought in [the federal] action would render this Petition and motion moot").

Although Exxon did argue to the SJC that a resolution of the issues pending in the state suit would not "resolve the broader issues that are pending in [f]ederal [c]ourt," J. App'x at 1125, Exxon also conceded that all of its claims against the Massachusetts Attorney General in both actions arose from the same operative facts, *id.* at 1133–34. And it bears noting that Exxon did not merely seek to quash or modify the CID under Section 6(7) of Massachusetts General Laws chapter 93A; it also requested equitable relief relating to the broader investigation – asking the state court to exercise its "inherent authority" to disqualify Attorney General Healey from the investigation because of her public statements suggesting bias against Exxon. *See* J. App'x at 1042–43; *see also id.* at 1060 (requesting disqualification if the court "determines that it can exercise personal jurisdiction over ExxonMobil"); *Eli Lilly & Co. v. Gottstein*, 617 F.3d 186, 195 (2d Cir. 2010) (stating that a "protective order, like any ongoing injunction, is always subject to the inherent power of the district court" and "might be thought of as a form of injunction in . . . particular setting[s]" (internal quotation marks omitted) (quoting

39

*Poliquin v. Garden Way, Inc.*, 989 F.2d 527, 535 (1st Cir. 1993)). The record thus demonstrates that Exxon understood it could plead in the alternative – without being concerned about waiving its personal jurisdiction objections – and request relief outside the four corners of a traditional motion to quash. *See Booth v. Augis*, 72 Mass. App. Ct. 164, 168–69 (2008) (distinguishing cases like *Heacock v. Heacock*, 402 Mass. 21 (1988), "where the court in the first action . . . lacked jurisdiction to hear the claims sought to be precluded in the second action (or to award the full measure of relief)"); *Exxon Mobil Corp.*, 479 Mass. at 329 n.15 (explaining that the Superior Court "is not . . . limited [in its jurisdiction], and may hear any case under [chapter] 93A 'for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper'"(citation omitted)).

We are also unpersuaded by Exxon's contention that res judicata does not apply because the Massachusetts CID proceeding was limited in nature and thus failed to provide Exxon with a full and fair opportunity to litigate its federal claims. In a case involving New York's res judicata law – which mirrors Massachusetts law on that score – this Court rejected the suggestion that litigants are in a "defensive" posture when they bring special proceedings objecting to government actions; moreover, we expressly dismissed the notion that being in a

40

"defensive" posture would alter the analysis for claim preclusion. *Bartel Dental Books Co. v. Schultz*, 786 F.2d 486, 489 & n.1 (2d Cir. 1986) (barring litigation of § 1983 claims that were or could have been litigated in state proceeding). Under the essentially identical Massachusetts preclusion test, any differences in Exxon's ability to assert objections in the CID proceeding are therefore irrelevant.

Accordingly, we find that the claims brought in the federal action could have been raised in the CID proceeding and are therefore identical for purposes of Massachusetts res judicata law.

### 3. *There Is a Prior Final Judgment on the Merits.*

Finally, as to the third res judicata element, there can be no dispute that the Massachusetts Superior Court issued a final order on January 11, 2017, which denied Exxon's petition to set aside the CID and granted the Massachusetts Attorney General's petition to compel Exxon's production of documents. **[JA-1009–14.]** Exxon appealed that final order to the SJC, which affirmed the Superior Court's decision on April 13, 2018. Exxon then sought certiorari before the United States Supreme Court, which denied the petition on January 7, 2019. **[Dkt. 213.]**

Notwithstanding this series of final orders, Exxon argues that there was no final judgment on the merits because the Superior Court expressly reserved

41

decision on Exxon's constitutional claims. This argument is largely based on a footnote in the Superior Court's opinion in which the court stated that it would "not address Exxon's arguments regarding free speech at this time because misleading or deceptive advertising is not protected by the First Amendment." *In re Civ. Investigative Demand No. 2016-EPD-36*, No. SUCV20161888F, 2017 WL 627305, at *4 n.2 (Mass. Super. Ct. Jan. 11, 2017). Reading the footnote to mean that the court expressly reserved decision on the constitutional claims at issue here, Exxon argues that "[n]o Massachusetts court has held [that res judicata] applies to matters that a court could have adjudicated but elected not to." Exxon Reply Br. at 31.

But Exxon misconstrues the footnote in question. Considered in its entirety, the Superior Court's opinion clearly reflects that it rejected Exxon's free speech arguments centered on viewpoint discrimination after considering Exxon's contentions that the CID violated various state constitutional guarantees – guarantees that Exxon acknowledged were coextensive with the First Amendment. *See, e.g.*, J. App'x at 1100 (Exxon arguing in its motion to set aside or modify the CID that "Article XVI, like the First Amendment, prohibits government action that targets speech because of its content" and citing Massachusetts case

42

law stating that Article XVI is coextensive with the First Amendment). Indeed, Exxon thoroughly litigated its constitutional arguments before the Superior Court. *See id.* at 1044 (Exxon arguing that Article XVI – the state First Amendment analogue – "prohibits the Attorney General from issuing a CID to prescribe what shall be orthodox in matters of public concern"); *id.* at 1071 (Exxon arguing that the CID violates Article XVI, because it "impermissibly infringes ExxonMobil's political speech"); *id.* at 1073 (Exxon arguing that pursuant to Article XIV – the state analogue to the Fourth Amendment – "'unreasonable' civil investigative demands 'must be quashed or modified'" (citation omitted)); *see also id.* at 1216–18 (counsel for the Attorney General addressing at oral argument whether the CID violates free speech and unreasonable search and seizure guarantees).

The footnote on which Exxon stakes its argument in no way limited or conditioned the state court's decision to uphold the CID, and the record reflects that the court could not have upheld the CID without first concluding that Exxon's impermissible motive claims were meritless. *See Att'y Gen. v. Colleton*, 387 Mass. 790, 800 (1982) (explaining that "[civil investigative] demands which invade any constitutional rights of the investigated party cannot be condoned"). We therefore find that the constitutional claims against the Massachusetts Attorney General

43

were fully litigated and decided in a final judgment on the merits.

*　　*　　*

Because all three elements of the Massachusetts claim preclusion test have been satisfied, we agree with the district court that Exxon's First Amendment claims are barred by the doctrine of res judicata.

## III. CONCLUSION

For the reasons stated above, we conclude that Exxon's claims against the New York Attorney General are moot and grant the Attorney General's motion to dismiss, *see* Dkt. 190, as the Attorney General's investigation has ceased, the subsequent enforcement action has been decided in Exxon's favor, and the state is not appealing that decision. We further conclude that Exxon's claims against the Massachusetts Attorney General are barred under the doctrine of res judicata, as Exxon could have pursued the relief it now seeks in an earlier Massachusetts state court proceeding arising from the same underlying events. Accordingly, we DISMISS Exxon's appeal as to the New York Attorney General and AFFIRM the district court's judgment as to the Massachusetts Attorney General.

44